UNITED STATES DISTRICT COURT WESTERN
DISTRIC OF NEW YORK

COMPLAINT:

DAMON MONTGOMERY

Plaintiff

~VS~

This action is brought pursuan
to 42 U.S.C. § 1983,

**17   CV   861** 

Jury Trial Demanded:

DEMOCRAT AND CHRONICLE
GARY CRAIG
WILLIAM HOCHOL, JR.
U.S. ATTORNEY DOUGLAS GREGORY

Defendants.

PLEASE TAKE NOTICE, that the above plaintiff in
this matter, Damon Montgomery, sworn to on this 24th
day of August 2017 and upon all the proceedings
heretofore had herein in relation to Indictment No.
17~CR~6005 subject matter of this complaint
plaintiff moves this Court for an Order
Granting the relief sought in this Complaint,
and for such other, further and different
relief as this Court deems just and
proper.

1.

# STATEMENT OF JURISDICTION:

This is a civil action seeking relief and or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 (3) and (4), and 2201.

# PARTIES TO THIS ACTION:

Damon Montgomery,    Plaintiff.
I.C.J.
4 Court St.
Geneseo, NY 14454

                                                    Defendants

1. Democrat & Chronicle
Defendant is sued in their Official Capacity
Address of Defendant: 245 East Main St.,
Roc. NY. 14604

2. Gary Craig
Defendant is sued in their personal Capacity
Address of Defendant: 245 East Main St.
Roc. NY. 14604.
gcraig@gannett.com

2.

3. William Hochol                                          Defendant's
Defendant: is sued in his personal Capacity.
Address: of Defendant: 100 State Street
Roc. NY. 14614


4. U.S. Attorney Douglas Gregory
Defendant: is sued in his personal Capacity
Address: of defendant: 100 State Street
Roc. NY. 14614

## PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT:

5. Plaintiff has no previous lawsuits in state or Federal Court dealing with the same facts involved in this action.

## STATEMENT OF CLAIM:

6. The plaintiff is indicted for one (1) count alleging the following: From about 2015 to March of 2016, the plaintiff conspired to possex with the intent to distribute, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a controlled substance, in violation of Title 21, United States Code, Sections 841 (a)(i) and 841 (b)(i)(A). All in violation of Title 21, United States Code Section 846.

7. The plaintiff was arrested on March 22, 2016 and has remained in pre-trial detention from that date, absent a detention hearing and an opportunity to secure his release.

4.

8. The plaintiff's family's property is a subject of a forfeiture allegation without cause, resulting in extreme family issues, hardship and ridicule.

9. The crux of this matter is the media firestorm that was ignited by columnist Gary Craig, who wrote an article in the Democrat and Chronicle, titled: "Important to know where your heroin is".

10. Underneith the title is a picture of former U.S. Attorney William Hochul holding a press conference, standing next to him is U.S. Attorney Douglas Gregory, with head state prosecutor Sandra Voorley standing off in the back.

11. This columnist starts off by stating: " Rule number one of heroin dealing. Don't leave your heroin in what you think is an abandoned apartment, but may actually be rental property. Rule number two: Don't buy a $43,000 car before leaving the heroin in the rental property. Okay maybe these aren't the first two rules but if they're not somewhere on the list then they should be. Just ask Aaron Montgomery, one of the local men accused of being a key player in a major heroin pipeline between Philadelphia and Rochester."

12.     Such prejudicial Firestorm comes prior to plaintiffs indictment. The media, tar-brushing allegations clearly made it Fundamentally unfair for Mr. Montgomery to receive an impartial grand jury proceeding. Alleged Factual evidence, according to columnist Gary Craig, who assisted the Federal government by painting a picture of the plaintiff in a comical ridiculing way that would lead any Juror Who read this particular article to automatically vote for an indictment of the plaintiff.

13.     Furthermore, the plaintiff pretrial detention was Fatally Flawed by the prosecutor Failure to afford Mr. Montgomery a timely detention hearing, therefore causing a 18 USC Section 3142, Violation, for Congressional intention that the detention hearing and it's critical Time requirements be rigorously Construed and applied is therefore commanded Not only by the statute's literal, obligatory language, but, as the legislative history reveals, by the substantive ends of the Act. Accord Hurtado, 779 F.2d at 1484 (The procedural safeguards of the Act are necessary to guarantee Fairness For those Faced with the "severe deprivation" of liberty caused by pretrail detention; the language of Section 3142 (F) admits no exceptions).

14. For over 17 months, Mr. Montgomery have yet to have a detention hearing, clearly another dimension of Malicious prosecution. Under 18 U.S.C. Section 3142, pretrial detention should be the exception rather than the rule in Federal criminal cases, and release is required if there is any set of conditions that will reasonably assure the plaintiff's appearence in Court and safety of the Community.

15. United States v. Lieybn (2000 SD iIowa), 104 F. Supp. 2d 1182. "The Government must move for detention at defendants First appearance, unless we find exceptional circumstances, we will not deviate from clear, unambiguous and mandatory statutory language." Rubin v. United States, 449 U.S. 424, 430, 101 S. Ct. 698, 701, 66 L. Ed. 2d 633 (1981); Tennessee Valley Authority v. Hill, 437 U.S. 153, 187 N. 33, 98 S. Ct. 2279, 2298 N. 33, 57 L. Ed. 2d 117 (1978). The Federal prosecutor nor the Judge in this matter did not consider the "First appearence" requirement, where the Second Circuit refused to "weaken the Act's procedural Fabric by encouraging imprcise application of procedural requirements.

16.    It is of course obvious that if the prosecutors and Judges fail to follow the simple detention hearing requirements of Section 3142 (f), there could be unfortunate consequences in particular cases.

17.    The Government use and manipulation of the media publicity was clearly pervasive, adverse and directed solely at Mr. Montgomery, rather than the alleged conspiracy as a whole, which caused a substantial prejudicial impact on the Grand Jury's decision to indict; Therefore the Government directly and in-directly coerced the Jury. Added the depth and extent of the wording in the Democrat and Chronicle would obviously impact the Grand Jury's decision to indict, Therefore rendering the Grand Jury proceedings fundamentally unfair, depriving Mr. Montgomery of his due process right to an impartial Grand Jury. Grand Jury materials in violation of Federal Rules of Criminal Procedure 6 (e). Lance, 610 F. 2d 202, 217, Bank of Nova Scotia, 487 U.S. at 256~257. Overall, the conduct of the Grand Jury proceedings were unethical.

18. The plaintiff in this matter contends that he has been intentionally, stratigically prejudiced and deprived of his right to a fair and impartial Grand Jury, due to selective prosecution. Moreover, constitutional and procedural violations were done solely so the Government could gain an improper tactical advantage. However the law provides that such violations merit dismissal of the indictment with prejudice to curtail future prosecutorial misconduct and prevent injustice, must be Granted as the Relief sought by the plaintiff, Simmons V. Abruzzo, 44 J.3d 83, 86 (2d Cir. 1995).

19. A. FIRST CLAIM: On Friday November 4th 2016 (the defendant) the "Democrat And Chronicle" News~Paper Company located in Rochester N.Y. ran a article written by columnist Gary Craig, where they released and publicly swayed public oppinion, with revealing Federal wire~taps prior to plaintiffs Grand Jury proceedings. Therefore directly coercing the Jury to render an indictment.

9.

The constitutional basis for this claim under 42 U.S.C.
§ 1983 is:

Fifth Amendment Violation:

Fourth Amendment Violation:

Laura v. Charles, 219 F.3d 202, 203
(2d Cir. 2000).

Laura, was the first case to address
"Public Display Following Arrest,"
also known as the, ("Perp Walk").
The Second Circuit held that, a staged
perp walk solely for the benefit of
the press "exacerbates the seizure of
the arrestee unreasonably and therefore violates
the Fourth Amendment." 219 F. 3d at 203.
The decision relied on Supreme Court and
earlier Second Circuit precedent that
found a Fourth Amendment violation in
a search context where the press followed
officers into a home as they executed
a warrant. See: Warrants.

20. Damon Montgomery was taken through a modern day media "perp-walk," by displaying evidence during pre-indictment while causing an indirect Form of coercion, manipulating the thoughts and minds of members of the Grand Jury due to the Democrat & Chronicle painting a picture of guilt prior to indictment and prior to trial or a plea, For one, is innocent until proven guilty. However such negative media coverage was solely for the benefit of the press... As it was in the "Laura" case.

21. The Relief Mr. Montgomery is seek for this claim:

Is to be rewarded $ 700,000 – Seven hundred thousand, from the Democrat & Chronicle News Paper, for punitive damages, where by their News paper article – effected Mr. Montgomery case directly, the press exacerbates the seizure of the arrestee unreasonably and therefore violates his Fourth Amendment, while also causing a Eighth Amendment violation of cruel and unusual punishment, to be inflected; Due to the vote for indictment leading to incarceration.

11.

Incarceration For over 17 months due to
the media perp walk has caused emotional
and psychological duress.
Victimization due to slander and
False allegations, that attorney David
R. Morabito has confirmed to the
Fact of the Government's allegations
which are in the article printed
in the Democrat & Chronicle to not
be "accurate". See Exhibit "A".
Furthermore Mr. Montgomery is also requesting
a Full and complete apology from the
Democrat & Chronicle, to be printed
in the Democrat & Chronicle:

22. A. SECOND CLAIM: On Friday November 4th of 2016
(defendant) "Gary Craig" who is a columnist for the
Democrat & Chronicle, located in Rochester N.Y., 245
East Main St. 14604. Wrote an article that
swayed public oppinion thus causing an
indictment of Mr. Montgomery.

The constitutional basis For this claim under
42 U.S.C. § 1983 is as Follows:

Fourth & Eighth Amendment Violation:

12.

See: Laura v. Charles, 214 F. 3d 202, 203 (2d Cir. 2000). Public Display Following arrest, while the writer did not conduct a full research of the thousands of pages, nor listening to wiretaps and reviewing surveillance as attorney David R. Morabito therefore it is safe to say that Mr. Gary Craig — "jumped the gun" so to speak, because according to this licensed attorney's findings the Government allegations regarding Mr. Montgomery conduct and character in relations to this so-called huge narcotics conspiracy, is not accurate. See: Exhibit "A".

Therefore the Relief Mr. Montgomery is seeking is to be rewarded amount of $100,000, One hundred thousand from Mr. Gary Craig, and for a public apology to be posted in the Democrat & Chronicle, for his part in causing, humiliation, slander, pain & suffering as well as emotional duress.

13.

23. A THIRD CLAIM: William Hochol Jr. the defendant in this matter who has since resign as the head Federal prosecutor for the Western District, nonethers played a critical part, in malicious prosecution, selective prosecution, and vindictive prosecution.

24. Causing a Fourth, Six and Eighth Amendment violation: Which are the Constitiunal basis for this claim under 42 U.S.C. § 1983. See Exhibit "A"

25. The head of the conspiracy pleaded guilty and recieved 16 years, while according to the documents of the case Mr. Montgomery was a lower level relative conduct not the "Head", however there has yet to be made a plea offer as it was for the Head of the conspiracy! Why is this? This can only be called - Malicious and selective prosecution.

26. Therefore the Relief sought from Mr. William Hochol who has a previous history of abuse of authority as it relates to people of Color.

27. The plaintiff in this matter is requesting to be rewarded $400.000, four hundred thousand from Mr. William Hochol Jr. for pain and suffering, caused by malicious targetting and malicious prosecution that has resulted in emotional and psycological duress.

28. A FOURTH CLAIM U.S. Attorney Douglas Gregory, (defendant) in this complaint, has acted outside the scope of his duties as a U.S. Attorney, for he has clearly conducted himself in a unethical manner, by over-characterizing Mr. Montgomery in the 16-MJ-536 (WDNY) Discovery. By doing so, he has committed, Malicious and selective prosecution. See Exhibit "A"

29. The Constitutional basis for this claim under 42 U.S.C. § 1983 is:

30. Fourth and Eighth Amendment Violation.

31. Relief Sought: is to be rewarded for punitive damages in the amount of $400.000 Four hundred thousand, by U.S. attorney Douglas Gregory.

15.

32. Furthermore to also have Mr. Gregory, immediately removed from the plaintiffs' federal indictment, for his conduct also is seen as systemic racism.

# RELIEF SOUGHT

33. Is a public apology by the Democratic & Chronicle and Gary Craig, along side having U.S. Attorney Douglas Gregory completely removed from all ongoing and future proceedings in relations to Mr. Damon Montgomery federal case. Lastly Mr. Montgomery is requesting to be rewarded in the total amount from all defendants in the amount of $1.6 Million Dollars, for pain and suffering, emotional duress, and malicious prosecution.

16.

34.   I'll Declare Under Penalty of Perjury
that the Foregoing Is True and Correct.

Executed on _____ 8/24/2017 _____

Signature of Plaintiff

EXHIBIT 'A'

EXHIBIT A

**DAVID R. MORABITO**
Attorney at Law
117 West Commercial Street
P.O. Box 187
East Rochester, NY 14445-0187
(585) 586-5770
FAX: (585) 383-1496

September 22, 2016

Douglas Gregory, Esq.
Assistant U.S. Attorney
500 Federal Building
100 State Street
Rochester, NY 14614

Re:   USA vs Damon Montgomery
      16-MJ-536(WDNY)

Dear Doug:

When I first got involved in this case, I was told by the Government, agents, and co-counsel that Damon Montgomery was a vicious drug lord in charge of a huge narcotics conspiracy covering the northeastern United States. I was further told that he was the leader involved in violent gang activity. After reviewing literally many thousands of pages, listening to wiretaps and reviewing surveillance, I have come to realize that the hereinstated is not accurate.

In fact, it appears that Mr. Montgomery has no history of violence, never carried a gun or used a gun in drug trafficking. He was not the "leader" of the group from Philadelphia and was not even the leader of the group from Rochester. It is my understanding that he in fact was purchasing contraband from different sources and that he was not the main supplier. Upon further review of discovery, it indicates that my client was in the lower or middle (at most) relative to conduct of all the participants in this conspiracy. He was not making the money that I was led to believe that he was making. Additionally, it appears that his history indicates that he has drug use which precipitated his conduct to begin with. Finally, after reviewing the extensive discovery, it appears that he himself was accused by others of being an informant. Was he?

Now that I have had the opportunity to review the very extensive discovery and competently represent my client, he wishes to accept responsibility and resolve this case with a guilty plea. I am aware of the potential enhancements.

EXHIBIT    B.

EXHIBIT A

# LAW AND DISORDER

# Important to know where your heroin is

GARY CRAIG
COLUMNIST

Rule number one of heroin dealing: Don't leave your heroin in what you think is an abandoned apartment, but may actually be a rental property.

Rule number two: Don't buy a $43,000 car before leaving the heroin in the rental property.

Okay, maybe these aren't the first two rules, but if they're not somewhere on the list then they should be. Just ask Damon Montgomery, one of the local men accused of being a key player in a major heroin pipeline between Philadelphia and Rochester.

According to recently unsealed court records, Montgomery broke both rules. First, he left a major stash of heroin in an apartment that an uncle handled as a property manager. Unknown to Montgomery, who thought the apartment was empty, the uncle had rented the property out. The uncle was not connected to the alleged drug-dealing, records show.)

Two men who rented the apartment at 447 Thurston Road moved in on March 5 and "discovered a brown paper shop-



Former U.S. Attorney William Hochul holds a news conference on a major heroin bust in March. Authorities targeted a significant heroin pipeline between Philadelphia and Rochester.

SHAWN DOWD/STAFF FILE PHOTO

under a sink," according to the affidavit from Malcolm Van Alstyne Jr., a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, or ATF.

"Upon looking inside the bag, they observed numerous white packages. Believing that what they found was possible narcotics, they called the police."

Inside the bag was 7,580 "decks" — or small bags — of heroin, Assistant U.S. Attorney Douglas Gregory, the prosecutor in the case, said Monday.

On March 5, Montgomery was already under intense surveillance — the focus of a wiretap, police tails, and even occasional air surveil-

The subsequent criminal case, which resulted in 14 arrests in March, generated a ton of evidence.

"All of the attorneys are still going through the many thousands of pages," said attorney David Morabito, who represents Montgomery. A federal magistrate judge allowed the appointment of an attorney whose job is solely to corral and organize all of the evidence for defense attorneys. Morabito said he has received eight terabytes of computerized evidence.

Unsurprisingly, police suspected that the loss of a significant amount of heroin might prompt some communication between the alleged traffickers. And, according

were found on Thurston Road on the morning of March 5, and by that afternoon Montgomery was allegedly trying to explain how he'd lost the heroin.

According to a partial transcript of the wiretap, Montgomery explained in a conversation with an alleged Philly-based supplier, Jerome Randolph, "My uncle the (expletive) property (expletive) manager ... so long story, he move(d) a (expletive) (expletive) in the (expletive) crib bro... these (expletive) go in there ... find the (expletive) bomb ...call the (expletive) police. Police come and run down on the (expletive) bandit house."

The court records

plained that the load of heroin ... which he referred to as 'the bomb,' was seized by police.

Montgomery then offered up his 2011 Jaguar he said he'd recently purchased for $43,000.

"If you want the car ... there's no excuse," he said. "... My car costs more than the tab literally."

At one point the conversation veers into just how much the "tab" allegedly is — how much has been paid in advance and how much is owed. Authorities allege the two settle into a shorthand about the debt, and a rambling shorthand it is.

Randolph: "At 90 that's 64 big ones ... so you only be down you'll be ... that would be 7.7 on top of that."

Montgomery: "Oh, OK ... one second, you said 90 at the 72 right? ... OK Boom times."

Randolph: "720 ... 590." Montgomery: "... My (expletive) head hurt. Let me turn on my calculator, 72 times 900 ... that's 64 ... 82"

Montgomery: "Hold up, hold on ...15 .. that would be 49 ...8?"

Randolph: "... Let's not confuse it real quick. ... The regular count would be 57, subtract 15."

Montgomery: "... If I give you the 15, it would be 42 right?"

This conversation — sounding like a drug-related "Who's on first?" exchange — continues for minutes more, records show.

Ultimately, it appears that Montgomery got to keep the car.

However, federal authorities are now seeking to take possession of the Jaguar under federal forfeiture laws.

"My car worth like $48,000," Montgomery allegedly said in the March 5 conversation. "I really don't want to give up my (expletive) car."

(To subscribe to email notifications of the Law and Disorder blog, please email me at gcraig@gannett.com. Notifications also will be sent via my Twitter account @gcraig1 and posted on my Facebook page — facebook



More than 7,500 "decks" of heroin, similar to those at left, were seized in Rochester by authorities in March.

FILE PHOTO

DAMON Montgomery
4 Court Street
Geneseo NY 14454

Clerk,
United St
2 Niagr
Buffal



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 14454
02 4W $ 001.61⁰
0000338091 AUG 29 2017

DC - WDNY

G 3 1 2017

BUFFALO

/.S. District court
tes CourtHouse
4 St
0, NY. 14202-3350